**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF OHIO**

**EASTERN DIVISION**

| | |
|---|---|
| **B.M., AN INDIVIDUAL,**<br><br>Plaintiff,<br><br>**RED ROOF INNS, INC.; RED ROOF FRANCHISING, LLC; and RRI WEST MANAGEMENT, LLC,**<br><br>Defendants. | **CIVIL ACTION NO: 2:26-cv-321**<br><br>**JUDGE ______________**<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

COMES NOW the Plaintiff B.M., by and through the undersigned counsel, and respectfully submits her Complaint for damages and makes the following averments:

## INTRODUCTION

1. This action for damages is brought by B.M. ("Plaintiff"), a survivor of sex trafficking, under the Federal William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA"), 18 U.S.C. § 1595.

2. B.M. alleges that Defendants derived financial benefit from facilitating the subject sex trafficking by providing a venue—and the cover of a legitimate business—where Plaintiff's trafficker and sex buyers could exploit victims, including B.M in this instance. Sex trafficking operations cannot operate without access to physical spaces; providing a trafficker with a hotel room provides the essential place of business. Defendants enabled Plaintiff's trafficker despite obvious and apparent indicators of sex trafficking occurring at the hotel property.

3. Defendants had the knowledge and opportunity to prevent the severe and permanent harm B.M. experienced. Instead, Defendants continued to profit from and facilitate the trafficking venture by renting rooms and providing hotel services under circumstances in which they knew or should have known that sex trafficking was occurring at the property. Accordingly, B.M. brings this action for damages and attorneys' fees as authorized by federal law.

4. B.M. meets the definition of a sex trafficking victim as she was induced by force, fraud, and coercion by her trafficker to engage in commercial sex acts at the subject hotel. Section 1591 of the TVPRA criminalizes sex trafficking of adults by force, fraud, or coercion. See 18 U.S.C. § 1591. Separately, § 1595 of the TVPRA provides individuals who are victims of sex trafficking with a civil remedy against traffickers and the beneficiaries of the sex trafficking crime. See 18 U.S.C. § 1595(a). More specifically, § 1595 provides for three distinct causes of action: (1) a claim against the trafficker who directly violated § 1591(a)(1) – a criminal statute; (2) a beneficiary claim against the trafficker who directly violated § 1591(a)(2) – a criminal statute; and (3) a beneficiary claim against a civil defendant who did not violate § 1591, but who "knowingly benefit[ed], financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter." 18 U.S.C. § 1595(a); the subject lawsuit is applicable to prong three, i.e., a beneficiary claim against civil defendants.

5. Defendants' decision to prioritize profits over protecting sex trafficking victims resulted in the repeated sexual exploitation of B.M. on their subject property during the relevant time period. B.M. brings this action for damages against Defendants pursuant to the TVPRA. Defendants knowingly benefited from participation in a venture that they knew or should have known to be engaging in violations of 18 U.S.C. § 1591(a).

**OVERVIEW OF TRAFFICKING**

6. It has been known in the hospitality industry since before B.M. was trafficked that a significant portion of all sex trafficking in the United States of America occurs within the hospitality industry at hotels and motels.

7. For decades, sex traffickers have brazenly operated in and out of hotels throughout this country. Traffickers paraded throughout hotels, while hospitality giants and local owners stood on the sidelines and did nothing. Instead, hotels and motels paid only lip service to campaigns against sex trafficking and stood by collecting profits from sex trafficking occurring on their premises.

8. Defendants knew and have known that they profited from sex trafficking occurring on the subject property and under their brand flags.

9. Rather than taking timely and effective measures to stop profiting from this epidemic, Defendants chose to ignore the open and obvious presence of sex trafficking at the subject property and on their branded properties, benefiting from the profit and fees created by the rooms rented and Wi-Fi provided for this explicit and apparent purpose.

10. Defendants and other members of the hospitality industry were and had long been aware of the prevalence of human trafficking, particularly sex trafficking, at hotels in general, at the subject hotel, and at Defendants' branded properties. Defendants and others in the industry had access to much public information on the prevalence of human trafficking at hotels.

11. Defendants' decision to prioritize profits over protecting sex trafficking victims resulted in the repeated sexual exploitation of B.M. on their subject property.

12. B.M., a survivor of sex trafficking, brings this action for damages against Defendants pursuant to the TVPRA. Defendants knowingly benefited from participation in a venture that they knew or should have known to be engaging in violations of 18 U.S.C. § 1591(a).

**PARTIES**

13. Due to the sensitive, private, and potentially retaliatory nature of the allegations herein, Plaintiff's name and address are not contained in this Complaint to protect the safety, privacy, and identity of this subject sex trafficked victim. Nationwide, similarly situated plaintiffs have proceeded by pseudonym or by their initials due to the foregoing.

14. Plaintiff is currently a resident of the State of North Carolina.

15. Plaintiff was born in 1986.

16. At all times relevant and material, Defendant Red Roof Inns, Inc. owned, operated, co-operated, and/or franchised a hotel doing business as Red Roof Inn Asheville West and located at 16 Crowell Rd, Asheville, NC 28806, and was authorized to do, licensed to do, and was doing business in the aforesaid State offering the subject hotel as a place of public lodging.

17. At all times relevant and material, Defendant Red Roof Franchising, LLC franchised and/or operated a hotel doing business as Red Roof Inn Asheville West located at 16 Crowell Rd, Asheville, NC 28806, and was authorized to do, licensed to do, and was doing business in the aforesaid State offering the subject hotel as a place of public lodging.

18. Defendant Red Roof Franchising, LLC ("RRF") is a Delaware limited liability company with its corporate headquarters and principal place of business in Ohio.

19. Defendant Red Roof Inns, Inc. is a Delaware corporation with its principal place of business in Ohio. Defendant Red Roof Inns, Inc. provided franchise opportunities to its hotels and motels through

Defendant Red Roof Franchising, LLC (together, Red Roof Inns, Inc. and Red Roof Franchising, LLC will be referred to as "Red Roof"). Red Roof purchased, owned, and managed a network of hotels and motels globally, primarily in the Midwest, Southern, and Eastern United States. Red Roof served customers throughout the United States and other countries throughout the world.

20. Red Roof is a global hotel brand with approximately 650 branded properties worldwide. It is a Delaware corporation with its corporate headquarters and principal place of business at 7185 Walton Pkwy, New Albany, Ohio 43054.

21. Red Roof maintains a registered agent in Ohio and can be served through its registered agent, Corporation Service Company, at 3366 Riverside Dr., Suite 103, Upper Arlington, Ohio 43221.

22. At all times relevant and material, the Asheville Red Roof Inn was a wholly-owned and/or directly operated Red Roof branded corporate property. As a corporate property—as distinguished from a franchised property owned by an independent third-party franchisee—Defendants directly controlled and were responsible for the day-to-day staffing, training, management, and operation of the Asheville Red Roof Inn.

23. Defendant Red Roof owned, supervised, managed, controlled, and/or operated the Red Roof Inn located at 16 Crowell Rd, Asheville, NC 28806 (the "Subject Red Roof Inn" or "branded property" or "subject hotel"):

a) The Subject Red Roof Inn was a Red Roof Inn branded property;

b) Red Roof and RRI West Management, LLC employees worked throughout the Asheville Red Roof Inn in jobs including front desk and housekeeping;

c) Red Roof was the principal with control over nearly every element of operations at the Asheville Red Roof Inn. Red Roof is liable, directly, vicariously, or indirectly through an agency

relationship for the acts and/or omissions of the employees at its branded hotels, including the Asheville Red Roof Inn where B.M. was trafficked;

d) Red Roof controlled and dictated the actions and inactions of the Asheville Red Roof Inn through highly specific and detailed brand standards, policies, and procedures;

e) Red Roof knowingly benefited, or received something of value, from its ventures at the Asheville Red Roof Inn through royalty payments, licensing fees, and percentages of gross room revenue generated by hotel operations, including rates charged through rooms where B.M. was trafficked, as well as from maintaining a positive public image for the Red Roof Inn brand. Red Roof also benefited from gathering personal data from the Wi-Fi it provided to customers including B.M. and her trafficker; and

f) Whenever reference is made in this Complaint to any act, deed, or conduct of Red Roof, the allegation is that Red Roof engaged in the act, deed, or conduct by or through one or more of their officers, directors, agents, employees, or representatives who was actively engaged in the management, direction, control, or transaction of the ordinary business and affairs of Red Roof.

## JURISDICTION AND VENUE

24. This Honorable Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because this action arises under the Constitution, laws, or treaties of the United States, namely 18 U.S.C. § 1595.

25. Venue is proper in this court pursuant to 28 U.S.C. § 1391(b)(1) because pursuant to 28 U.S.C. §§ 1391(c)(2) and 1391(d), at least one Defendant is a resident of the Southern District of Ohio and all Defendants are residents of the State of Ohio.

26. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the Counts asserted in this action occurred in the judicial district where this

action was brought and/or Defendants conduct business within this district pursuant to 28 U.S.C. § 1391(b).

27. The principal place of business of Defendant Red Roof Inns, Inc. is located at 7185 Walton Pkwy, New Albany, Ohio 43054.

28. The principal place of business of Defendant Red Roof Franchising, LLC is 605 South Front Street, Columbus, Ohio 43215.

29. Defendants RED ROOF INNS, INC., RED ROOF FRANCHISING, LLC, and RRI WEST MANAGEMENT, LLC participated in a joint venture operating the subject hotel from a central location at Defendants' corporate headquarters located at 7185 Walton Pkwy, New Albany, Ohio 43054, within the Southern District of Ohio. On information and belief:

a) The relationship between RED ROOF INNS, INC. and RED ROOF FRANCHISING, LLC was centered at the aforesaid corporate office in the Southern District of Ohio;

b) Defendants RED ROOF INNS, INC., RED ROOF FRANCHISING, LLC, and RRI WEST MANAGEMENT, LLC signed agreements with one another related to the subject hotel from the aforesaid corporate headquarters in the Southern District of Ohio;

c) Defendants RED ROOF INNS, INC., RED ROOF FRANCHISING, LLC, and RRI WEST MANAGEMENT, LLC exercised joint control over operations of the subject hotel from a central location at the aforesaid corporate offices in the Southern District of Ohio;

d) Defendants RED ROOF INNS, INC., RED ROOF FRANCHISING, LLC, and RRI WEST MANAGEMENT, LLC distributed revenue earned from the subject hotel among themselves from the aforesaid corporate headquarters in the Southern District of Ohio;

e) Defendants RED ROOF INNS, INC., RED ROOF FRANCHISING, LLC, and RRI WEST MANAGEMENT, LLC developed policies for the subject hotel from the aforesaid corporate headquarters in the Southern District of Ohio; and

f) Defendants RED ROOF INNS, INC., RED ROOF FRANCHISING, LLC, and RRI WEST MANAGEMENT, LLC communicated with one another regarding the operation of the subject hotel from the aforesaid corporate headquarters in the Southern District of Ohio.

**RED ROOF**

30. During the relevant time period, Red Roof exercised day-to-day control over the Asheville Red Roof Inn and its other branded hotels through centralized corporate systems, training, policies, and brand standards. Defendant RRI West Management, LLC, as the operator and manager of the Asheville Red Roof Inn, likewise exercised day-to-day operational control over the property. Red Roof implemented and retained brand hotel control, including control over the Asheville Red Roof Inn, as either direct subsidiaries or under the terms of its franchise agreements, and exercised such control through its management affiliate RRI West Management, LLC.

31. During the relevant time period, Red Roof controlled the operation of its branded properties, including the subject hotel, through a variety of means and monitored compliance, including but not limited to:

a) Providing and requiring the use of software, hardware, and platforms where data and information is shared with Red Roof corporate and monitored compliance;

b) Providing and requiring the use of reservation platforms where payment modes and suspicious reservations would suggest trafficking and monitored compliance;

c) Providing training and education to branded hotels through webinars, seminars, conferences, and online portals;

d) Providing and controlling customer review and response platforms and monitored compliance;

e) Monitoring customer reviews and response platforms;

f) Hosting and monitoring online bookings on Red Roof's domain;

g) Requiring the use of Red Roof's online bookings;

h) Monitoring online bookings;

i) Requiring branded hotels to use Red Roof's customer rewards program;

j) Monitoring branded hotels' use of Red Roof's customer rewards program;

k) Requiring branded hotels to use Red Roof's property management software;

l) Requiring branded hotels to use approved vendors for internet services or other requirements for Wi-Fi access and filtering;

m) Providing IT support for all property management systems, owned, operated, and required by Red Roof;

n) Setting employee wages;

o) Sharing profits;

p) Standardizing training methods for employees;

q) Building and maintaining the facility in a manner specified by the owner;

r) Standardized or strict rules of operation;

s) Regular inspection of the facility and operation by the owner; and

t) Fixing prices.

32. Red Roof managed and monitored compliance of corporate training, policies, and procedures on human trafficking, cybersecurity, guest preferences, reward programs, internet access, hotel furniture, amenities, food and beverage, cleanliness, and/or other hotel brand-related policies published and communicated via property management systems with back-end management by Red Roof.

33. Red Roof controlled and monitored compliance of uniform and required reservation, marketing, customer support systems, and loyalty programs at its branded hotels, including the Asheville Red Roof Inn, and did so in coordination with Defendant RRI West Management, LLC as operator of the subject property. Red Roof also advertised its branded hotels through national press releases, newsletters, emails, announcements on redroof.com, and mentions across its corporate media channels.

34. Red Roof required its hotels to use a consolidated IT system and database for property management, credit processing, and centralized billing, as well as problem-tracking to ensure all problems were resolved promptly and that emergencies were escalated, and monitored compliance.

35. Red Roof posted job openings for its branded properties on its central career posting website.

## CAUSE OF ACTION
## VIOLATION OF 18 U.S.C. § 1595 ("TVPRA")

36. Plaintiff sets forth an action for violation of 18 U.S.C. § 1595 as against Defendants.

37. The TVPRA prohibits Defendants from profiting from any venture they know or should have known involves a violation of § 1591 and thereby establishes a non-delegable duty of reasonable care.

38. Plaintiff was trafficked at Defendants' subject hotel in 2011 and through and inclusive of December 2016 by a male trafficker known as "Andre"; whether same is his true legal name is unknown.

39. At all relevant times, Defendants Red Roof were involved in the staffing and day-to-day operation of the subject hotel where Plaintiff was trafficked for sex during the relevant time period.

40. In order to induce Plaintiff by force, fraud and coercion to engage in sex with sex buyers at the subject hotel, her trafficker used various means to do so including (a) physical violence with residual visible bruising; (b) controlling Plaintiff through intimidation and threats; (c) at times, confiscating and keeping personal items of Plaintiff thereby, at times, restricting her ability to leave or seek independent assistance; (d) trafficker instilled in Plaintiff the fear of severe bodily injury and fear of death if the trafficker's directives were not complied with; (e) psychological coercion; and (f) other means of force, fraud and coercion used by the trafficker of Plaintiff to induce her to have sex with sex buyers at Defendants' hotels.

41. Rooms rented for use for the trafficking of Plaintiff on Defendants' premises were rented by Plaintiff's trafficker or at the direction of the trafficker.

42. Discovery will inform whether the trafficker (or individuals at the trafficker's direction) booked rooms at the subject hotel that were used for the sex trafficking of the Plaintiff in violation of the TVPRA:

   a) Under the registrant's proper legal name or a false name;

   b) Whether cash, prepaid card, debit card, or credit card was used at the time of the respective booking or renewal; and

   c) Whether staff of Defendants required for each booking that the renter show their identification.

43. Defendants Red Roof knowingly benefited from the sex trafficking of Plaintiff at Defendants' subject hotel by receiving payment and royalties for the rooms rented by Plaintiff's trafficker (or at the direction of her trafficker) that were used for sex trafficking, including as to the Plaintiff, in violation of the TVPRA in 2011 and through and inclusive of December 2016.

44. Defendants Red Roof rented rooms to individuals they knew or should have known were engaged in sex trafficking, and of Plaintiff in particular, in violation of the TVPRA.

45. Plaintiff's trafficker used proceeds derived from the sex trafficking occurring on the subject premises to continue to pay for rooms rented at the subject hotel during the time that Plaintiff was being sex trafficked there, in violation of the TVPRA.

46. Plaintiff's trafficker advertised Plaintiff online for sex which was to occur at Defendants' subject hotel premises including on Backpage and similar online platforms.

47. Defendants Red Roof received other financial benefit including, but not limited to, from Wi-Fi which, in part, enabled the subject sex trafficking to occur (as Plaintiff was advertised by her trafficker online), and from such Wi-Fi service Defendants, upon information and belief, received financial benefit.

48. During the relevant time period alleged herein, Defendants Red Roof took part in a common undertaking or enterprise involving risk and potential profit with Plaintiff's trafficker that violated the TVPRA.

49. Operating a hotel and renting out rooms is an enterprise involving risk and potential profit.

50. Defendants Red Roof operating the subject hotel and renting out rooms to Plaintiff's trafficker was an enterprise involving risk and potential profit which violated the TVPRA as to the Plaintiff herein.

51. Defendants Red Roof's association with Plaintiff's sex trafficker was a venture because Plaintiff's trafficker had prior commercial dealings with Defendants at the subject hotel premises by means of rooms repeatedly rented, or repeatedly renewed, by the trafficker (or at the direction of the trafficker) during the time period of Plaintiff's trafficking, which Defendants knew or should have known were being used for the sex trafficking of Plaintiff in violation of the TVPRA, and which the parties wished to continue for profit.

52. Defendants Red Roof's repeated rental of rooms to Plaintiff's trafficker (or an individual renting at the direction of the trafficker) at the subject hotel was not a standard arm's length transaction, but

rather the repeated room rental and renewal transactions which occurred during the time that Plaintiff was trafficked at the subject hotel were colored by overt indicators of sex trafficking such that Defendants knew or should have known that they were renting rooms to individuals engaged in sex trafficking, and of Plaintiff in particular, in violation of the TVPRA.

53. A continuous business relationship existed between Defendants Red Roof, their agents, employees, and staff, and Plaintiff's trafficker's sex trafficking business, in part, in that Defendants provided assistance, support, or facilitation to Plaintiff's trafficker by repeatedly renting rooms, or renewing room rentals, to individuals they knew or should have known were involved in sex trafficking on the premises in violation of the TVPRA, including as to the Plaintiff herein; and in doing so facilitated the venture's success.

54. Defendants Red Roof knowingly benefited from this venture, or enterprise, involving risk and potential profit, which was in violation of the TVPRA as to the Plaintiff herein, by receiving payment for the rooms rented by Plaintiff's trafficker (or at the direction of her trafficker) that were used for sex trafficking, including as to the Plaintiff, in 2011 and through and inclusive of December 2016.

55. Defendants Red Roof participated in a venture by operating the subject hotel that rented rooms to individuals that Defendants knew or should have known were involved in sex trafficking, including as to the Plaintiff herein, in violation of the TVPRA.

56. Defendants Red Roof participated in a venture that Defendants knew or should have known was trafficking Plaintiff at the subject hotel in violation of the TVPRA.

57. Defendants Red Roof knew or should have known about the nature of the sex trafficking occurring at the subject hotel, including as to the Plaintiff, due to the many red flags then and there existing, including but not limited to:

a) Steady foot traffic of sex buyers to the trafficker's rented rooms to have sex with Plaintiff;

b) Plaintiff would at times walk around the subject hotel grounds visibly drug impaired (e.g., heroin, cocaine, or alcohol), sleep deprived, hygiene impaired, behavior impaired, malnourished, and in sexually explicit clothing;

c) During the time that Plaintiff was trafficked at Defendants' hotel her trafficker often withheld food from her; she was very skinny and malnourished;

d) Plaintiff's trafficker was also a drug dealer on the subject hotel premises, which increased the number of suspicious persons on the subject premises;

e) Plaintiff's trafficker often sold drugs in Defendants' hotel parking lot;

f) Plaintiff recalls her trafficker being friendly with, and speaking often with, someone whom she perceived to be the owner or manager of the property;

g) Plaintiff recalls her trafficker being friendly with front desk staff at the subject hotel;

h) Plaintiff's room exhibited signs of commercial sex work;

i) Inside the hotel rooms rented by the trafficker (or at the direction of the trafficker) there were suspicious persons and suspicious items including weapons (e.g., guns and knives), cash, drugs, drug paraphernalia, and condoms which housekeeping observed or should have observed when frequently entering the subject rooms to service them;

j) Loud noise and yelling emanating from the rooms where sex trafficking of Plaintiff was occurring; and

k) Plaintiff's trafficker "Andre" would routinely book rooms for extended period of time;

l) Plaintiff, at times was trafficked with other female victims including but not limited to C.M.

m) On information and belief, Plaintiff's trafficker "Andre" paid front desk staff at the subject hotel to alert him whenever law enforcement officers were on the premises asking questions;

n) On information and belief, a female employee at the subject hotel had a friend or family member employed at a nearby motel who would provide advance warning to Plaintiff's trafficker whenever law enforcement had conducted trafficking-related arrests or investigations at that other property, enabling the trafficker to evade detection at the subject hotel; and

o) When multiple trafficking victims were staying in the same room and simultaneous commercial sex transactions were occurring, on information and belief, a front desk employee at the subject hotel, at times, provided Plaintiff's trafficker access to additional hotel rooms that were discounted. Because the additional rooms were unregistered and discounted, Plaintiff and other victims were directed by their trafficker to clean those rooms themselves upon completion of each commercial sex transaction and to restore the rooms to their pre-occupied appearance;

p) Other commonly known sex trafficking red flags which the above-captioned Defendants knew or should have known of had anti-trafficking measures been timely and properly implemented at the hotel.

58. Defendants Red Roof staff witnessed and observed on a frequent basis signs and indicators of sex trafficking including items set forth above.

59. When being trafficked at the subject hotel in 2011 and through and inclusive of December 2016, during Defendants' ownership and/or management, Plaintiff interacted with Defendants' staff on a frequent basis, and Defendants' staff witnessed and observed Plaintiff, her trafficker, as well as a frequent procession of sex buyers going in and out of the subject rented rooms, contemporaneous with other signs and indicators of trafficking occurring on the subject premises.

60. Plaintiff knows that some of the individuals that witnessed and observed red flags indicative of suspicion for sex trafficking were staff members in that the staff were readily identifiable to Plaintiff either by her knowing of the individual and/or by means of the staff wardrobe/nametag/hotel logo and/or by means of a staff member being in an employee-restricted area.

61. Defendants' involvement and failure, by their respective agents, servants, staff, and employees, to timely and properly prevent the sex trafficking or timely intervene regarding same was a proximate and competent cause and substantial factor in causing Plaintiff's severe injuries in this case including, but not limited to, being the victim of sex trafficking when at this subject hotel and suffering personal injury and the trauma physically and mentally of being induced to engage in commercial sex with multiple sex buyers per day, while being trafficked, and while simultaneously being under fear of severe harm or death if she did not comply, as well as all residual injuries suffered by PTSD.

62. Defendants Red Roof, during the relevant time period, could deny accommodation and/or eject a guest for a number of reasons including, but not limited to: (1) guest visibly under the influence of drugs or alcohol; (2) guest creating a nuisance to the public; (3) guest believed to use a hotel room for unlawful purposes; (4) guest uses hotel amenities and premises for unlawful acts; (5) guest brings in extra unregistered guests; (6) guest's behavior reasonably disturbs other guests; (7) guest violates other rules set by the hotel; and (8) for other indicated reasons.

63. Plaintiff being sex trafficked at Defendants' hotel was a proximate cause and substantial factor in causing her severe and permanent injuries including but not limited to personal injuries including the horror of being a victim of sex trafficking, as well as significant levels of psychological trauma due to the levels of abuse she was caused to endure during the time she was trafficked. This trauma led to depression, anxiety disorders, and PTSD, which in turn has affected and continues to affect her daily functioning.

64. As a direct and proximate result of Defendants Red Roof's involvement and multiple failures to act, mandate, establish, execute anti-trafficking measures, and modify their anti-trafficking efforts at the subject hotel property, Plaintiff was sex trafficked, sexually exploited, and victimized repeatedly at Defendants' hotel in violation of the TVPRA.

65. As a consequence of being sex trafficked at Defendants' subject hotel, Plaintiff suffered and will continue to suffer substantial economic, physical, mental, emotional, psychiatric, and psychological injuries as the result of being trafficked and sexually exploited at the subject hotel in violation of 18 U.S.C. § 1591.

**TOLLING OF LIMITATIONS**

66. The TVPRA provides a 10-year statute of limitations under 18 U.S.C. § 1595(c). B.M. was trafficked at the Asheville Red Roof Inn in 2011 and through and inclusive of December 2016, and this action is brought within the applicable limitations period.

67. To the extent Defendants assert an affirmative defense of limitations, B.M. invokes the discovery rule. At the time she was harmed and through December 2016, B.M. was under the coercion and control of her trafficker, known as "Andre," who drugged her, threatened her with bodily harm and death, psychologically abused her, exercised coercive control over her, and severely restricted her freedom. As a result, B.M. lacked the information and capacity to understand her injuries and their legal causes.

68. Thus, B.M. did not discover and could not reasonably have discovered the legal cause of her injury—through no fault of her own—and lacked the information and understanding to bring a claim because she did not know both her injury and the cause of her injury. This lack of information was a direct result of B.M. being kept under the control, coercion, and manipulation of her trafficker, which Defendants facilitated.

69. At the time B.M. was harmed, she did not know that she was the victim of human trafficking as that term is defined by law, that her injury arose from being "trafficked" at Defendants' hotels, or that she was a person "trafficked," much less that she was the "victim" of a legal venture involving Defendants, and she did not discover and was not in a position to discover the legal cause of her injury for years after her trafficking ended.

70. To the extent Defendants assert an affirmative defense of limitations, B.M. invokes the doctrine of equitable tolling because, as a result of being a victim of trafficking, B.M. faced extraordinary circumstances, which arose through no fault of her own, that prevented her from filing a lawsuit, and those circumstances did not end more than 10 years before B.M. filed this lawsuit.

71. While under the control of her trafficker through December 2016, B.M. did not have the freedom to investigate her claims, to identify those responsible, or to seek legal representation necessary to pursue her legal rights. B.M. could not have pursued her claims while under the active control of her trafficker despite the exercise of ordinary diligence.

72. To the extent Defendants assert an affirmative defense of limitations, B.M. invokes the continuing violation doctrine because this lawsuit arises out of a pattern of continuous and ongoing tortious conduct by Defendants, individually and in concert, at the subject hotel.

73. B.M. was subject to continuous trafficking at the subject property in 2011 and through and inclusive of December 2016, which is not more than 10 years before B.M. brings this lawsuit.

74. This continuous trafficking resulted from Defendants' facilitation of trafficking at the subject property and Defendants' ongoing ventures with one another and with criminal traffickers at that hotel.

75. Furthermore, the TVPRA's ten-year limitations period, 18 U.S.C. § 1595(c), is subject to equitable tolling. See Arellano v. McDonough, 598 U.S. 1, 6–7 (2023) (reaffirming the "hornbook law"

presumption that federal statutes of limitations are subject to equitable tolling absent a clear congressional statement to the contrary). See also Doe v. G6 Hospitality Franchising LLC et al, No. 3:2025-cv-00770, Doc. 53 (N.D. Tex. 2025).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment against Defendants as identified in the above-referenced Count and as follows:

a) All available compensatory damages for the losses described with respect to the above cause of action;

b) All available noneconomic damages, including without limitation conscious pain, conscious suffering, and loss of enjoyment of life;

c) Physical pain and suffering;

d) Mental anguish and emotional distress damages;

e) Consequential and/or special damages;

f) Disgorgement of profits obtained through unjust enrichment;

g) Restitution;

h) All damages allowable under the TVPRA;

i) Punitive damages;

j) Reasonable and recoverable attorney's fees;

k) Costs of this action; and

l) Pre-judgment and all other interest recoverable.

**DEMAND FOR JURY TRIAL**

Plaintiff respectfully requests a trial by jury on all issues so triable.

Dated: March 17, 2026

Respectfully submitted,

*s/ Matthew J.P. Coffman*
Matthew J.P. Coffman
Tristan Akers
Coffman Legal, LLC
1550 Old Henderson Rd #126
Columbus, OH 43220
Phone: (614) 949-1181
Fax: (614) 386-9964
mcoffman@mcoffmanlegal.com
takers@mcoffmanlegal.com

and

Randolph Janis, Esq.
DOUGLAS AND LONDON, P.C.
(PHV motion forthcoming)
One State Street, 35th Floor
New York, NY 10004
Telephone: (212) 566-7500
Facsimile: (212) 566-7501
rjanis@douglasandlondon.com

Chloe Makowsky, Esq.
DOUGLAS AND LONDON, P.C.
(PHV motion forthcoming)
One State Street, 35th Floor
New York, NY 10004
Telephone: (212) 566-7500
Facsimile: (212) 566-7501
cmakowsky@douglasandlondon.com

Attorneys for Plaintiff